## Pottsville Mutual Fire Insurance Company *versus* Horan.

1. By the terms of a fire insurance policy, the assured stipulated that the representations made by him in the application were a warranty on his part that said application contained a true exposition of the consideration, situation, value and risk of the property, and further, if by any means the risk should be increased, and the assured neglect to notify the company, that the policy should be void. *Held*, that the neglect to mention the existence of a carpenter shop on the premises at the time of the application, and the erection after the insurance of a new building by the insured on an adjoining lot, without notice to the company, avoided the policy.

[Pottsville Mutual Fire Ins. Co. v. Horan.]

2. To set off the claim that the risk had been increased by the erection of the new building, it was contended that the risk had been diminished by the removal of the carpenter shop and its erection into a dwelling-house, and the court left it to the jury to determine the question. *Held.* that this was error.

March 17th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Schuylkill county*: Of January Term 1878, No. 6.

Covenant by Thomas Horan against the Pottsville Mutual Fire Insurance Company on a policy of insurance. At the trial it appeared that on April 5th 1873, Horan applied to the agent of the company for an insurance of $2000 upon a two-story frame house, upon lot No. 6 in the town of Gilberton. In the application were a number of questions, the seventh of which was in these words, " For what purpose are the adjoining buildings used within eight rods ?" and the answer thereto was, " Private dwellings." At the foot of these questions were the following stipulations :

"And the undersigned, applicant for the proposed insurance, hereby covenants and agrees to accept of the policy issued upon this application and survey, if in accordance therewith. But if any untrue answer has been given to the foregoing interrogatories, whereby the said company has been deceived, as to the character of the risk, or if any change be made as to tenants and occupancy of these premises, without being notified to this company, and endorsed upon their policy, then said policy of said insurance to be void and of no effect. It is also agreed, if the company so elect, that by returning the premium for the unexpired term of this insurance, after giving due notice of their intention to do so, this insurance shall thenceforth cease. And the insured hereby covenants and engages that the representations given in the application for this insurance is a warranty on the part of the assured, and contains a just, full and true exposition of all the facts and circumstances in regard to condition, situation and value of the property insured.

"And the said applicant hereby covenants and agrees to and with the said company, that the foregoing is a just, full and true exposition of all the circumstances in regard to the condition, situation, value and risk of the property to be insured, so far as the same are known to the applicant, and are material to the risk."

The conditions of insurance attached to the policy stipulated, inter alia, as follows :

1. Applications for insurance shall specify the construction and material of the buildings to be insured, * * * by whom occupied, whether as a private dwelling or how otherwise; its situation with regard to contiguous buildings, and their construction or materials. The applicant shall also state the true cash value of the property to be insured; also any other facts relating and material to the risk.

[Pottsville Mutual Fire Ins. Co. *v.* Horan.]

And the said valuation, description and survey shall be taken and deemed to be the act of the insured, and a warranty on his, her or their part.

A false description of, or omission to make known in said application any fact or feature relating to the risk, or which, if known, would induce the company to reject said application, or would, in their estimation, increase the hazard of the same, or an over-valuation of the property or interest insured, shall render absolutely void any policy issued upon such description or valuation.

2. If, after insurance, the risk shall be increased by any means whatsoever, or if the property be used or occupied so as to render the risk more hazardous than at the time of insuring, and the assured shall neglect to notify the company of said increased risk, or fails to pay such additional premium as the company shall determine, and obtain the written consent of the secretary to a continuance of the policy, such insurance shall be void and of no effect.

11. Persons sustaining loss or damage by fire   *   *   *   shall deliver   *   *   *   particular account of their loss or damage, rendering to this company   *   *   *   the actual cash value of each article or item, respectively, at the time of such loss, signed with their own hands, which said account shall set forth the whole cash value of the subject insured.   And they shall accompany the same with their oath or affirmation, declaring the said account to be true and just; showing also whether any or what insurances have been made on the same property,   *   *   *   and giving a copy of the written portion of the policy of each company, with the endorsements thereon;   *   *   *   how the fire originated, so far as they know or believe, or have any information, and how the premises were occupied, and who were the occupants at the time of the loss.

Any misrepresentation or concealment, fraud or false swearing, shall cause a forfeiture of all claims on the insurers, and shall be a full bar to all remedies against this company, under the within policy.   And said company shall in no case be deemed to have waived a full, strict and literal compliance with and performance of each and every of the terms, provisions, conditions and stipulations in this policy contained, and hereto annexed, to be performed and observed by and on the part of the insured, and every person claiming by, through or under them, unless such waiver be express, and manifested in writing, under the signature of the secretary of said company.   And no agent of this company shall have power to violate any of these conditions.

19. No agent of this company shall have the right or power to waive any of the foregoing conditions, unless fully authorized thereto by the secretary of this company, in writing.

It appeared that at the time of the application for insurance there was a little one-story shed or building, used as a carpenter shop, on lot No. 6 (the same lot on which the building insured stood), lot

No. 7 being entirely vacant at that time. This little building stood north and back of the house insured, but was not taken into consideration by Davidson, the agent, or Horan as affecting the risk, because it was understood that Horan would at once remove it to the opposite side of lot No. 7, and convert it into a dwelling-house.

About two months after obtaining the policy, Horan commenced to erect a frame dwelling-house upon lot No. 7, and finished the same that summer. This building filled up the vacant space between Horan's house and one Hildebrand's, and thus made a continuous row of houses. The agent never notified the company of the existence of the carpenter shop or of the erection of the new building.

The fire by which the insured property was destroyed, occurred on the 23d day of September 1874, and originated in the Hildebrand house, whence it spread to the adjoining new building lately erected by Horan, and through it was communicated to the house insured.

The company offered evidence tending to show that the erection of the new building upon the vacant lot, without notice to the company, was a material increase of the risk to the property insured and claimed it avoided the policy. There was evidence on the part of plaintiff that he informed the company's agent of his intention to build at the time he made the application, and that after the building was erected, he showed it to the agent. The latter alleged that plaintiff did not speak to him about it in his capacity as agent. The eleventh assignment of error was the following portion of the court's (Green, J.,) charge:

" But it becomes a question of fact for you to determine as to whether there was any increased risk by reason of the erection of the adjoining building. If there was no increased risk, then there was no necessity imposed upon Horan of giving any notice to the company at all, because the risk was not increased. It is a question of fact for you to determine whether it was increased or not. If you should determine that it was increased, then it would be the duty of Horan to give notice to the company of the increased risk.

" You will recollect the testimony in this case, that at the time that this application was made, or at the time the policy was issued there was this building upon lot No. 6, purchased from Seaman, and in addition to that there was a little building in the rear, some 16 by 24 feet, which had been used by Seaman as a carpenter shop. That was adjoining the main building of Seaman, just in the rear. When Horan had purchased this property, the carpenter shop was removed from where it was and put over to the other line of the lot close to Hildebrand's, and was changed from a carpenter shop to a dwelling-house. That possibly may have lessened the risk of fire to the building insured by Horan; it was moved to a greater dis-

tance away. You have the testimony with regard to the erection of the building upon this adjoining lot between Hildebrand's and the other house which Horan purchased. You have also the testimony as to the character of the building that was there, and it becomes a question of fact for you to decide as to whether there was any increased risk—that is, increased beyond the risk that existed at the time when the application and policy were effected. You must take into consideration, in the first place, the erection of the building that was placed there, and the testimony of the witnesses with regard to that; the testimony of the different fire insurance agents; the testimony of Miller and Hill; the testimony of the officers'of the Pottsville Fire Insurance Company with regard to the increase of risk and the amount of additional premium that they would have charged by reason of the increase of risk. Then you must take into consideration whether there was anything by which the risk was lessened, so it would be for you to determine, under all the evidence in this case, whether, by reason of the erection of one building and the removal of another, the risk of fire at the time that the insurance was affected was substantially increased or diminished by the erection of the one and the removal of the other.

"It is a question of fact for the jury to decide, under all the evidence in this case, as to whether there was any increase of risk by fire; and whether it was counterbalanced by the removal of the building to which he has referred."

The verdict was for plaintiff for $1717.50. The defendant took this writ; among its assignments of error were the foregoing portion of the charge.

*A. W. Schalk*, for plaintiff in error.—A policy of insurance, with its clauses, conditions and stipulations, is the law of the legal relation between the insurers and insured, by which their mutual rights and liabilities are to be understood and measured: Weisenberger *v.* Harmony Insurance Co., 6 P. F. Smith 444.

The erection of the adjoining building, without notice to the company, was an increase of the risk and avoided the policy: Flanders on Fire Insurance, 2d ed. 520–531; Calvert *v.* Hamilton Mut. Ins. Co., 1 Allen 308; 4 Bennett's Fire Ins. Cases 538; 1 Id. 316; Stebbins *v.* Globe Ins. Co., 2 Hall 632; Francis *v.* Somerville Mut. Ins. Co., 1 Dutcher 78; Murdock et al. *v.* Chenango Mut. Ins. Co., 2 Comstock 210. Before the erection of the new building upon the premises, the assured should have obtained the consent of the company or paid an additional premium: Evans *v.* Tri-Mountain Mut. Fire Ins. Co., 9 Allen (Mass.) 329; Id. p. 310, sect. 29); Kern *v.* South St. Louis Mut. Ins. Co., 40 Mo. 19; Roberts *v.* Chenango County Mut. Ins. Co., 3 Hill (N. Y.) 501: Allen *v.* Massasoit Ins. Co., 99 Mass. 160.

The court erred in submitting to the jury the question as to

[Pottsville Mutual Fire Ins. Co. v. Horan.]

whether there was an increase of risk by the erection of the new building by the assured. The court thought that the mere existence of the little carpenter shop back of the building insured altered the case; assuming that the company had taken the risk of the proximity of this shop to the building insured, and that its removal had lessened the risk assumed by the company when it issued its policy, and, therefore, that such decrease of risk might properly be set off against the increase of risk caused by the erection of the new house. This is a novel and very dangerous doctrine.

*Joseph L. Walsh, M. M. L' Velle* and *D. B. Green,* for defendant.—It was admitted that the erection of the new building had increased the risk. But it was shown, on the other hand, that at the time the property was insured, a carpenter shop stood upon the lot directly in the rear of the house, and in very close proximity to it; that it was. fourteen feet in width by from twenty to twenty-four feet in depth, and from eight to twelve feet in height; that after the insurance, this shop had been removed to the other side of the adjoining lot (next to Hildebrand's), some twenty feet away, and placed nearer the rear end of the lot, and that it had been changed from a carpenter shop (admittedly hazardous,) into a dwelling-house. It was very evident that the risk of fire had been very much diminished by its removal and its change into a dwelling-house. This left it as a fair question of fact for the jury to decide whether the risk was as much lessened by the removal as it was increased by the erection of the new building.

An insurance company will not be allowed to take advantage of the mistakes or omissions of its agents, notwithstanding the rule that all parol statements and negotiations are merged in the written compact: Beal *v.* Park Fire Ins. Co., 16 Wis. 241.

When an agent, as well acquainted with the premises as the assured himself, fills up an application and has the assured sign it, the assured is not responsible for any misrepresentations in such survey: Roth *v.* City Ins. Co., 6 McLean (C. C., U. S.,) 324; Howard Fire Ins. Co. *v.* Bruner, 11 Harris 50; Michael *v.* Mut. Ins. Co., 10 La. Au. 737.

Where an application was unintentionally defective, on a point well known to the agent, the company and not the insured should be the sufferers : Campbell *v.* Merchants' and Farmers' Mut. Fire Ins. Co., 37 N. H. 35; Plumb *v.* Cattaraugus County Ins. Co., 18 N. Y. 392; Sarsfield *v.* Met. Ins. Co., 61 Barb. 479.

Mr. Justice TRUNKEY delivered the opinion of the court, May 5th 1879.

Thomas Horan, by accepting the policy, became a member of the Pottsville Mutual Fire Insurance Company. In his application,

he warranted his representations of facts and circumstances. Among the statements is, the adjoining buildings, within eight rods, are used for the purpose of private dwellings. The survey, on the back of the application, shows a vacant lot, twenty-six feet wide, between the property to be insured and Hildebrand's house. No mention is made in application or survey of the small building, called a carpenter shop. That Horan knew the contents of the application when he signed it, seems to be conceded; and there is no pretence of fraud or mistake, unless against the company, and in which the applicant participated. They talked about the shop, and of erecting a house on the vacant lot, and wittingly omitted both in giving the situation and surroundings. The applicant knew as well as the agent knew, that the company acted on a warranty that no building, save dwelling-houses, was within eight rods of the one to be insured, and that the lot on the east side was vacant. If they were honest, the shop was omitted in the description, because it was to be removed; if the applicant colluded with the agent in making a false statement, he shall not profit by the fraud: Smith *v.* Ins. Co., 12 Harris 320.

In the printed argument for defendant in error, it is said that, at the time of insurance, a carpenter's shop stood directly in rear of the house, in very close proximity to it, and admittedly hazardous. If that be so, it was a breach of the assured's warranty, and, by its express terms, the policy was void: Smith *v.* Ins. Co., *supra*. In such case defendants' twelfth point ought to have been affirmed. But the evidence of Davidson is, that it had ceased to be used as a shop, before the insurance, and was to be removed and used for a dwelling; it was soon after removed.

It is also said that "it was admitted that the erection of the new building increased the risk;" that fact was conclusively proved. Thereupon, it is urged that the risk of fire had been very much diminished, by removal of the shop and its change to a dwelling-house, and that it was a question for the jury, whether the risk had not been as much lessened by the removal as it was increased by the erection of the new building. This view was adopted by the court, and so much of the charge as relates thereto, constitutes the eleventh assignment of error. Some respect should be paid to a contract of insurance. Here, the assured warranted that he gave a "full and true exposition of all the circumstances in regard to the condition, situation, value and risk of the property;" and the assurer issued the policy on condition that "if, after insurance, the risk shall be increased by any means whatsoever  *  *  *  and the assured shall neglect to notify the company of said increased risk," such insurance shall be void. The risk was increased by act of the assured himself; the court instructed the jury that notice was not given to the company. This instruction is not here for review, and the argument respecting it cannot be considered. How, then,

[Pottsville Mutual Fire Ins. Co. v. Horan.]

coulᴅ there be a recovery on the policy? Is it according to the spirit of the contract, to say nothing of its letter, to set up the removal of a shop which he had warranted was not there? "The purpose of requiring a warranty is to dispense with inquiry and cast entirely upon the assured the obligation that the facts shall be as represented. Compliance with his warranty is a condition precedent to any recovery upon the contract. It is, therefore, that the materiality of the thing warranted is of no consequence. The assured, by his warranty, engages that, whatever the condition of things when he makes his application, the facts shall be as warranted when the policy attaches." Per STRONG, J., Ins. Co. v. Arthur, 6 Casey 315. It would be hard to hold Horan to the letter of his application, that no shop was near the house to be insured; he having promptly removed it, justice demands that the warranty be treated as unbroken when the policy attached; it is unconscionable to use its removal as a diminishing of risk and set-off, against the increased risk from his violation of the conditions of insurance. The company did not undertake to insure the house on the basis that it was "in very close proximity to" a carpenter shop, and the assured must accept this fact, or the consequences of a broken warranty.

In another view, the contract was made in reference to the situation and surroundings of the property. For a price paid by one party the other agreed to carry the risk. They did not agree that the assured may build on the adjacent vacant lot, making an unbroken line of buildings, and remove a back building. It might be quite easy to satisfy most persons that the removal lessened, as much as the new building increased, the risk, but it would be hard to satisfy anybody that, after such change, the risk was the same as contracted for. The contract provides for notice, assent, or cancellation, in case of increase of risk. After the change, the assurer, if notified, might have been willing to continue the insurance, with or without, additional consideration, or might have terminated the policy and refunded a ratable portion of the premium. It is not for the assured alone to change the contract, and the courts cannot do it for him. A setting up of some real or fancied lessening of risk, as a set-off against the increased risk by building up the vacant lot, could not have been apprehended when the contract was executed. A company which would submit to such imposition would soon be over-burdened, and its policies become worthless to their holders.

The proofs of loss are not set out in the paper-book, and the eighth and ninth assignments cannot be considered. The court having instructed the jury that notice was not given to the company, no other assignments require remark.

Judgment reversed, and a *venire facias de novo* awarded.